**CONNELL FOLEY LLP**
Marianne C. Tolomeo
Attorney ID # 007001987
56 Livingston Avenue
Roseland, NJ 07068
(973) 535-0500
Attorneys for Defendant
The University of Notre Dame du Lac

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| George Mandarakas, | CIVIL ACTION NO. _____ |
| Plaintiff, | (HONORABLE_____) |
| vs. | |
| The University of Notre Dame du Lac; Sedgwick Claims Management Services Inc, | |
| Defendant. | |

## NOTICE OF REMOVAL

TO:   THE JUDGES OF THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**PLEASE TAKE NOTICE** that pursuant to 28 U.S.C. §§1331, 1441, and 1446, defendant, The University of Notre Dame du Lac ("Defendant Notre Dame"), through its counsel, Connell Foley LLP, hereby removes to this Court the above styled action, pending as Docket No. MRS-L-428-23 in the Superior Court of New Jersey, Morris County, Law Division. Defendant Notre Dame believes that all of Plaintiff's claims are without merit, and will dispute them at the appropriate time, but for purposes of removal states the following:

      1.    Defendant Notre Dame desires to exercise its rights under the provisions of 28 U.S.C. §1441(a) to remove this action from the Superior Court of New Jersey, Law Division, Morris County, where the case is now pending under the name and style, George Mandarakas v.

The University of Notre Dame du Lac; Sedgwick Claims Management Services Inc, bearing Docket No. MRS-L-428-23.

2.      On April 10, 2023, Defendant Notre Dame received a copy of the Complaint, which is the initial pleading setting forth the claims for relief upon which the action is based. In accordance with 28 U.S.C. §1446(a), a copy of that pleading is attached hereto as Exhibit A.

3.      The within Notice of Removal is timely filed within thirty (30) days after Defendant Notre Dame received a copy of the initial pleading. See 28 U.S.C. §1446(b).

4.      This action is removable to this Court by Defendant Notre Dame pursuant to the provisions of 28 U.S.C. §1331 and 28 U.S.C. §1441.

5.      Plaintiff alleges causes of action which arise under the laws of the United States, specifically, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 and the Pregnancy Discrimination Act of 1978, 42 U.S.C. §2000e et seq., Title IX of the Education Amendments of 1972, 20 U.S.C. §1681 et seq., and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. §2601 et seq. Plaintiff alleges that Defendant Notre Dame subjected him to disparate treatment and retaliation based on gender and the pregnancy status of his spouse. Plaintiff further alleges interference and retaliation by Defendant Notre Dame with the rights afforded under the FMLA in violation of that statute.

6.      Because this matter asserts claims arising under the laws of the United States, removal is appropriate under 28 U.S.C. §1441(a).

7.      At the time of filing this Notice of Removal, the docket sheet in the state court action does not reflect that the other named defendant, Sedgwick Claims Management Services Inc., has been properly joined and served. Accordingly, consent of that defendant is not required for removal under 28 U.S.C. §1446(b)(2)(A).

8.      By filing this Notice of Removal, Defendant Notre Dame does not waive any defense that may be available to it, including, but not limited to, the right to contest in personam jurisdiction, improper service of process, and improper venue, in this Court or the court from which this action has been removed.

WHEREFORE, Defendant Notre Dame prays that the above action now pending against it in the Superior Court of New Jersey, Morris County, be removed to this Court pursuant to 28 U.S.C. §§1331, 1441 and 1446.

CONNELL FOLEY LLP
Attorneys for Defendant,
The University of Notre Dame du Lac

By: *Marianne C. Tolomeo*
Marianne C. Tolomeo

Dated:  May 9, 2023

## LOCAL CIVIL RULE 11.2

I, Marianne C. Tolomeo, hereby certify pursuant to Local Civil Rule 11.2, that the above-captioned matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

**CONNELL FOLEY LLP**
Attorneys for Defendant,
The University of Notre Dame du Lac

By: *Marianne C. Tolomeo*
Marianne C. Tolomeo

Dated:  May 9, 2023

# Exhibit A

Form A

RECEIVE

**Plaintiff or Filing Attorney Information:**

Name   George Mandarakas

NJ Attorney ID Number _____

APR 1 1 2023

Office of VP & General Counsel
University of Notre Dame

Address   45 Ironia Rd
          Randolph NJ 07869

Email Address _____

Telephone Number _____ ext. _____

Superior Court of New Jersey,

Law   Division Morris   County

Civil   Part

George Mandarakas _____ ,

Plaintiff,

Docket No:  MRS-L-000428-23

(to be filled in by the court)

v.

Civil Action

The University of Notre Dame; Sedgwick Claims Management Services Inc

**Complaint**

Defendant(s).

Plaintiff, George Mandarakas _____ , residing at: 45 Ironia Rd _____ ,
City of Randolph _____ , County of Morris _____ , State of New Jersey,
complaining of defendant, states as follows:

1. On May 31st _____ , 20 21 , The University of Notre Dame; SeDefendant:
   (Summarize what happened that resulted in your claim against the defendant.  Use additional pages if necessary.)
   Summarily terminated Plaintiff's employment while Plaintiff was on approved FMLA leave

   (Please see attached Complaint)
   _____
   _____
   _____

   The defendant in this action resides at:
       400 Main Building, Notre Dame, IN 46556

2. Plaintiff is entitled to relief from defendant under the above facts.

3. The harm that occurred as a result of defendant's acts include: (list each item of damage and injury)
   1.   Lost wages and benefits, emotional pain and suffering, indignity, humiliation, embarrassment, inconvenient and damage to his reputation, loss of career, and out-of-pocket expenses; punitive damages.

       ~~Compensatory: $10,000,000  Punitive: $50,000,000~~

## Form A

2. _____
   _____
   _____
   _____
   _____

3. _____
   _____
   _____
   _____
   _____

Wherefore, plaintiff requests judgment against defendant for damages, together with attorney's fees, if applicable, costs of suit, and any other relief as the court may deem proper.

2/18/23                                          *George Mandarakas*
Dated                                   Signature George Mandarakas

I certify that the dispute about which I am suing is not the subject of any other action pending in any other court or a pending arbitration proceeding to the best of my knowledge and belief. Also, to the best of my knowledge and belief no other action or arbitration proceeding is contemplated. Further, other than the parties set forth in this complaint, I know of no other parties that should be made a part of this lawsuit. In addition, I recognize my continuing obligation to file and serve on all parties and the court an amended certification if there is a change in the facts stated in this original certification.

02/18/2023                                       *George Mandarakas*
Dated                                   Signature George Mandarakas

**OPTIONAL: If you would like to have a judge decide your case, do not include the following paragraph in your complaint. If you would prefer to have a jury to decide your case, please sign your name after the following paragraph.**

**JURY DEMAND**

The plaintiff demands trial by a jury on all of the triable issues of this complaint, pursuant to New Jersey Court *Rules* 1:8-2(b) and 4:35-1(a).

02/18/2023                                       *George Mandarakas*
Dated                                   Signature GeorgeMandarakas

| GEORGE MANDARAKAS, | |
|---|---|
| Plaintiff, | Case No: |
| vs. | PLAINTIFF'S COMPLAINT AND JURY DEMAND |
| UNIVERISTY OF NOTRE DAME DU LAC, SEDGWICK CLAIMS MANAGEMENT SERVICES, INC., | |
| Defendants. | |

COMES NOW the Plaintiff, George Mandarakas, states:

## INTRODUCTION

1. Plaintiff, George Mandarakas, brings this action against Defendants, The University of Notre Dame du Lac ("Notre Dame") and Sedgwick Claims Management Services, Inc. ("Sedgwick"), for damages and equitable relief, for gender discrimination based on stereotypes about the role of men and women in family care, pregnancy discrimination by association with his pregnant spouse, retaliation, and FMLA interference and retaliation.

2. George Mandarakas brings this employment discrimination action against Notre Dame to seek redress of Notre Dame's violation of his rights under Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 ("Title VII") and the Pregnancy Discrimination Act of 1978 (the "PDA"), 42 U.S.C. § 2000e et seq., and Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 et seq., all of which prohibit gender discrimination, and the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 et seq., which provides job-protected leave for certain family and medical reasons.

3. The Pregnancy Discrimination Act is an amendment to Title VII which added to its definitions that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions..."

and requires employers to treat those affected by pregnancy or related conditions the same as all other workers.

4. In addition to direct protections in Title VII, courts have recognized Title VII to extend protections for individuals being discriminated against for being associated with a person or group, such as whites associating with blacks or here, an employee associating (by marriage) with a pregnant female.

5. Title IX prohibits sex discrimination in educational programs and related activities receiving federal financial assistance, and applies to claims of sex discrimination in certain employment situations. 20 U.S.C. § 161; 34 C.F.R. part 106, Subpart E.

6. Notre Dame chooses to accept federal funds and in so doing, accepts Title IX's prohibition against permitting gender stereotypes or pregnancy discrimination.

7. The Family Medical Leave Act provides job-protected leave for qualified medical and family reasons, including for the birth of a child. Notre Dame is a qualified employer and Plaintiff is a qualified employee under the Act.

8. The FMLA was also passed in part, to protect employees from the stereotyped assumptions regarding the role of women and men with regard to child care versus employment.

9. Each of these statutes are related because they are all intended to address the variety of ways in which gender bias or stereotypes about women and men will influence evaluation of their behavior in different ways.

10. Plaintiff was an "employee" of the University Notre Dame as defined in Title VII 42

11. Defendant University of Notre Dame is a private non-profit university

12. Notre Dame receives Federal financial assistance. U.S.C. § 2000e(f), and the EPA, 29 U.S.C. § 203(e).

13. Notre Dame is an "employer" as defined in Title VII, 42 U.S.C. § 2000e(b).

14. Notre Dame is an "educational institution" as defined in Title IX, 20 U.S.C. § 1681.

15. Defendant Sedgwick provides claims management services to various institutions and employers.

16. Sedgwick provides services to Notre Dame, acting as a third-party administrator.

17. Sedgwick is paid by Notre Dame, but retains a fiduciary or contractual obligation to employees who seek to exercise their FMLA rights.

18. Plaintiff has exhausted his administrative remedies by timely filing a Charge of Discrimination with the EEOC and receiving a Notice of Right to Sue.

This action is being brought within 90 days from the issuance of the Right to Sue.

19. Plaintiff was informed of his right to sue by the EEOC on January 3rd, 2023.

## **STATEMENT OF FACTS**

20. Mr. Mandarakas is a graduate of the University of Notre Dame and the former Director of Corporate Relations within the Development Department at University of Notre Dame.

21. Notre Dame summarily terminated his employment on May 31, 2021 while he was on approved FMLA leave assisting his wife with the birth of their child.

22. During his first year at Notre Dame, Mr. Mandarakas outperformed his peers despite having no experience in this area of work.

23. The COVID-19 pandemic affected clients' abilities to provide donations by affecting the monetary amount and causing delays in donations.

24. Plaintiff's managers and superiors knew or should have known that the pandemic's effect on Notre Dame donors was not related to Plaintiff's performance.

25. On February 16, 2021, Mr. Mandarakas announced to his managers he intended to take FMLA to care for his wife and newborn child.

26. On March 16, 2021, Mr. Mandarakas was called into work and given a warning which listed a number of concerns about his professionalism and performance.

27. The list of concerns was delivered as a "final warning," this was the first time Mr. Mandarakas was hearing of them.

28. This warning came as a shock, as the concerns were petty, confusing, or untrue and appeared to be an effort to paper Mr. Mandarakas' personnel file.

29. One critique on the March 16, 2021 warning was that Plaintiff dressed too casually on Zoom meetings.

30. Plaintiff's attire was no different than other employees on his team.

31. No one had ever told Plaintiff to dress more professionally on office calls prior to the March 16, 2021 "final" warning.

32. After this warning, Mr. Mandarakas noticed that other employees including his own manager (who had not recently requested FMLA leave to care for a spouse or child) continued to dress similarly to or less professionally than Plaintiff did, and they were not disciplined.

33. Another concern on the final warning regarded Plaintiff's using his cell phone to join a Zoom call instead of his computer.

34. Plaintiff had been given permission to use his phone for ZOOM , as management knew that his work computer webcam was broken, and refused to take appropriate actions to pay for a replacement webcam. Furthermore, Plaintiff's manager routinely conducted Zoom meetings on his own phone from within his car.

35. It was evident by the list of critiques and the lack of any progressive discipline (verbal or other warnings prior to the final warning) that management was looking for any possible reason to justify discipline.

36. One concern in the March 16th warning was that Plaintiff's donations were down.

37. Donations were down generally, including for Plaintiff, due to the effects of COVID-19 and nothing suggested Plaintiff was not working hard to attain his targets. In fact, up until his termination, Plaintiff had amassed the largest pipeline of opportunities on his entire team.

38. Despite believing that these criticisms were largely exaggerated, Mr. Mandarakas took steps to address his manager's warning, but was ignored and shutdown.

39. Plaintiff was given a final warning with no intent or time to allow him to succeed

40. Furthermore, Notre Dame maliciously took steps to ensure that Plaintiff could not improve his donation totals when Plaintiff's manager, Josh Tullis, started stealing Plaintiff's assigned accounts and donations.

41. For a manager to improperly take over Plaintiff's accounts and then terminate him for not making progress is direct evidence of discrimination.

42. Notre Dame normally follows a progressive discipline policy which includes coaching, warnings, and professional improvement plans. It is not typical for Notre Dame to summarily rush to fire an

employee.

43. Mr. Mandarakas' "final warning" was intended to discourage him from taking time off work to bond with his newborn child, and paper a reason to fire him in the event he was not dissuaded from taking leave.

44. Plaintiff filed a complaint about his mistreatment and discrimination with the Notre Dame Office of Institutional Equity on May 5, 2021, the same day he applied for FMLA leave, with the intent to protect him from further retaliatory actions by his manager.

45. While on FMLA leave, Plaintiff was pressured multiple times by his manager's superior, Mr. Drew Buscareno, to attend meetings. Despite Plaintiff's repeated attempts to ask Mr. Buscareno to respect his FMLA and time away with his family, Mr. Buscareno persisted and intentionally interfered with Plaintiff.

46. Because of this interference, Mr. Mandarakas reached out to the third-party administrator, Sedgwick, for help.

47. A Sedgwick employee informed Plaintiff's superiors via email that they should cease requiring Plaintiff to attend meetings, as this was FMLA interference.

48. The email dated May 12, 2021, stated as follows:

*George has requested a continuous leave of absence beginning 5/5/21-6/1/21 for the care of a family member and it is considered FMLA interference to require him to attend a meeting while he is pending FMLA. George has contacted me stating that he has received an email that is demanding/requiring he attend a meeting.*

*Please let me know if you have additional questions.*

*Thank you,*

*Leslie Rigsby (CLMS) Disability Claims Specialist*

49. Sedgwick was engaged by Notre Dame via contract to act as the third-party administrator for FMLA rights and leave requests.

50. While Sedgwick is not an employer of Notre Dame employees, Sedgwick retains a duty (contractual and fiduciary) to the employees and cannot favor the employer over the employee.

51. Employees are also third-party beneficiaries of the contract between Notre Dame

and Sedgwick.

52. Pursuant to this duty, Sedgwick employee Leslie Rigsby applied her knowledge of the FMLA's requirements and clearly recognized that the meeting requests were improper or interfering with Mr. Mandarakas' approved FMLA leave.

53. Rigsby knew that while an employer can require periodic updates regarding an employee's leave status and intent to return to work while on FMLA leave, the requested meetings could not have been related to a permissible purpose as the Mr. Mandarakas' family had only recently had a newborn child and there was nothing to update. Moreover, any updates regarding Mr. Mandarakas' leave status could have been obtained through Sedgwick.

54. After Sedgewick provided the e-mail reminder to avoid FMLA interference, someone from Notre Dame contacted Sedgwick and instructed them to rescind their email about FMLA interference.

55. A higher-level person at Sedgwick told employee Rigsby that "this is Notre Dame," implying that the fear of losing Notre Dame as a client was motivating this reversal.

56. In response to this pressure from Notre Dame, employee Rigsby then reversed herself stating that Sedgwick should not have offered an opinion about FMLA interference.

57. This explanation was not applicable to what was being asked of Plaintiff and was simply the result of this Sedgwick employee being forced to come up with some method to explain away a clear admission of Notre Dame's FMLA interference.

58. After it forced this reversal, Notre Dame then felt that it had permission to fire Mr. Mandarakas and took steps to do so on May 31, 2021.

59. Plaintiff was not made aware of his termination until he called Sedgwick to arrange for his return to work on or about June 14, 2021.

60. During this call, Mr. Mandarakas was told he was no longer an employee at Notre Dame and he learned that Sedgwick employee Rigsby had been placed on leave or taken leave after she had been forced to reverse herself in violation of Sedgwick's duty to Mr. Mandarakas.

61. After he was fired, Mr. Mandarakas reached out to the President of Notre Dame, Reverend Jenkins, asking him to evaluate what had happened.

62. Plaintiff later received a response from Notre Dame's in-house counsel suggesting

that they found nothing wrong, and that Plaintiff would not be reinstated.

63.. In response to this appeal to Rev. Jenkins, the University rejected all of his concerns and refused to conduct an investigation into the actual job performance of Mr. Mandarakas.

64. An investigation into actual job performance would require more than asking the managers to justify their pretextual decision to fire him, which appears to have been their only response. A reasonable investigation would have contradicted both the written warning in March 2021, as well as the reasons for termination offered by the management team.

65. Notre Dame could have easily contacted colleagues, donors, and faculty witnesses for Mr. Mandarakas who knew of his work ethic and his positive representation of the University.

66. There were a number of key donors that would have verified that Mr. Mandarakas was a positive representative of the University and doing well in his efforts to reach out to and encourage donations.

67. The actions of Defendant have caused profound hardship and damage to Mr. Mandarakas and his family including lost income, lost benefits, emotional distress, and damage to reputation.


## COUNT I

**Violation of Title VII – Discrimination on the Basis of Gender Stereotypes (against Notre Dame)**


69. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

70. Under the provisions of Title VII, it is unlawful for an employer to discriminate against an employee on the basis of sex, including because of pregnancy and related medical conditions.

71. As part of prohibition against sex discrimination it is unlawful for an employer to alter working conditions based on gender or gender stereotyping.

72. Notre Dame knowingly and intentionally discriminated against Mr. Mandarakas by terminating his employment because he did not conform with the outdated stereotype that men are to prioritize work over family when he took leave to care for his wife and newborn

child.

73. Notre Dame discriminated against Plaintiff when it summarily terminated Plaintiff's employment after he informed Notre Dame of his pregnant wife and need to take FMLA leave.

74. Defendant discriminated against Plaintiff on the basis of gender in violation of Title VII by viewing him negatively for taking time to care for his wife and child.

75. As a result of Defendant's conduct, Plaintiff suffered loss of employment, loss of wages and benefits, emotional pain and suffering, humiliation, embarrassment, inconvenience, damage to his reputation, loss of career, and out-of-pocket expenses.

76. The actions of Defendant also require the imposition of specific equitable and injunctive relief necessary to ensure future compliance with Title VII including, but not limited to:

(a) A court order requiring that the Defendant implement training in all positions within the Department of Development to avoid gender bias and stereotyping.

(b) A court order requiring that Defendant evaluate both standards of employees and processes within the department to ensure that they do not impact men who take leave to care for their family less favorably than women who do the same;

(c) Such other and further relief as may be required to effectuate any verdict or to ensure compliance with federal law.

WHEREFORE, Plaintiff requests lost wages and benefits; compensatory damages for loss of employment, loss of wages and benefits, emotional pain and suffering, humiliation, embarrassment, inconvenient and damage to his reputation, and out-of-pocket expenses; punitive damages, any other relief the Court deems just and necessary to make Plaintiff whole and effectuate the purpose of Title VII; prejudgment and post-judgment interest as allowed by law; attorneys' fees; expert witness fees; and costs.


## COUNT II

**Violation of Title VII – Pregnancy Discrimination (by Association) (Against Notre Dame)**

77. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

78. Notre Dame discriminated against Plaintiff based on his association with his pregnant wife by unjustifiably disciplining and ultimately terminating him upon learning of his wife's pregnancy and his eventual taking leave to support her and their newborn child.

79. Plaintiff's wife was pregnant and gave birth, and Plaintiff was punished for being associated with her during that time.

80. As a result of Defendants' conduct, Plaintiff suffered loss of employment, loss of wages and benefits, emotional pain and suffering, humiliation, embarrassment, inconvenience, damage to his reputation, loss of career, and out-of-pocket expenses.

WHEREFORE, Plaintiff requests lost wages and benefits; compensatory damages for loss of employment, loss of wages and benefits, emotional pain and suffering, humiliation, embarrassment, inconvenient and damage to his reputation, and out-of-pocket expenses; punitive damages, any other relief the Court deems just and necessary to make Plaintiff whole and effectuate the purpose of Title VII; prejudgment and post-judgment interest as allowed by law; attorneys' fees; expert witness fees; and costs.

## COUNT III

### Violation of Title VII – Retaliation (Against Notre Dame)

81. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

82. Title VII prohibits gender stereotyping and retaliation for engaging in protected activity by reporting concerns covered by the statute.

83. After Plaintiff complained about the discrimination to the Notre Dame Office of Institutional Equity, he was retaliated against because there was no investigation into his concerns, and he was later discharged.

84. As a proximate cause of Defendant's actions, Plaintiff has in the past and will in the future suffer injuries and damages as set forth above.

85. As a result of Defendant's actions, Plaintiff seeks monetary damages including but not limited to economic and career loss and damages for indignity and humiliation of being discriminated against.

WHEREFORE, Plaintiff requests judgment against Defendants in an amount which will fully and fairly compensate him for his injuries and damages; lost wages and benefits; compensatory damages for loss of employment, loss of wages and benefits, emotional pain and suffering, indignity, humiliation, embarrassment, inconvenient and damage to his reputation, loss of career, and out-of-pocket expenses; punitive damages, any other relief the Court deems just and necessary to make Plaintiff whole and effectuate the purpose of Title VII and Title IX; prejudgment and post-judgment interest as allowed by law; attorneys' fees; expert witness fees; and costs.

## COUNT IV

### Violation of Title IX – Retaliation (Against Notre Dame)

86. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

87. Title IX prohibits gender stereotyping and retaliation for engaging in protected activity by reporting concerns covered by those statutes.

88. After Plaintiff complained about the discrimination to the Notre Dame Office of Institutional Equity, he was retaliated against because there was no investigation into his concerns, and he was later discharged.

89. As a proximate cause of Defendant's actions, Plaintiff has in the past and will in the future suffer injuries and damages as set forth above.

90. As a result of Defendant's actions, Plaintiff seeks monetary damages including but not limited to economic and career loss and damages for indignity and humiliation of being discriminated against.

WHEREFORE, Plaintiff requests judgment against Defendants in an amount which will fully and fairly compensate him for his injuries and damages; lost wages and benefits;

compensatory damages for loss of employment, loss of wages and benefits, emotional pain and suffering, indignity, humiliation, embarrassment, inconvenient and damage to his reputation, loss of career, and out-of-pocket expenses; punitive damages, any other relief the Court deems just and necessary to make Plaintiff whole and effectuate the purpose of Title VII and Title IX; prejudgment and post-judgment interest as allowed by law; attorneys' fees; expert witness fees; and costs.

## COUNT V

**Family Medical Leave Act (FMLA) Interference and Retaliation (Against Notre Dame and Sedgwick)**

91. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

92. While employed at Notre Dame, Plaintiff was eligible to take leave under the Family Medical Leave Act (FMLA).

93. Notre Dame is a covered employer under FMLA and utilized a third-party administrator, Sedgwick, to assist in handling employee FMLA claims.

94. While Sedgwick is compensated by Notre Dame for these services, it retains a duty to employees like Mr. Mandarakas to ensure that their rights under the FMLA are protected and properly administered.

95. Sedgwick cannot choose to take the position of Notre Dame over that of an employee.

96. Notre Dame, through its third-party administrator, Sedgwick, granted Plaintiff FMLA leave from May 5, 2021, through June 17, 2021.

97. Notre Dame was given notice of both Plaintiff's intention to take leave and notice of when he would actually be away on leave.

98. From May 5 through May 20, 2021, Defendant pressured Plaintiff to attend meetings, despite him being on approved leave.

99. Sedgwick recognized the interference by Notre Dame, notified both Notre Dame and Plaintiff of such, and then proceeded to rescind this statement in an attempt to approve Notre

Dame's behavior and allow for more interference to occur.

100. Plaintiff was denied a benefit to which he was entitled under FMLA.

101. Notre Dame interfered with Plaintiff's ability and right to bond with and care for his newborn child and recovering wife when it repeatedly asked Plaintiff to attend meetings while on leave, and when it terminated Plaintiff's employment while he was on leave.

102. Sedgwick interfered with Plaintiff's ability and right to bond with and care for his newborn child and recovering wife when it allowed Notre Dame to engage in such interfering.

103. Defendants acted with deliberate indifferences and willful and wanton disregard to Plaintiff's federally protected rights.

104. Defendants' actions as set forth above resulted in Plaintiff's loss of advancement opportunities, employment benefits, and additional compensation.

105. By reason of the foregoing, Plaintiff has suffered damages in an amount to be determined at trial, including but not limited to back and front pay, lost sick and vacation time, lost benefits including retirement contributions, health benefits, lost pay for failure to promote, lost opportunities for advancement, compensatory damages for emotional and psychological injuries, and humiliation and reasonable costs and attorneys' fees.

WHEREFORE Plaintiff, George Mandarakas, demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate him for his injuries and damages; lost wages and benefits; compensatory damages for loss of employment, loss of wages and benefits, emotional pain and suffering, indignity, humiliation, embarrassment, inconvenient and damage to his reputation, loss of career, and out-of-pocket expenses; punitive damages, any other relief the Court deems just and necessary to make Plaintiff whole and effectuate the purpose of the law, including equitable and injunctive relief, prejudgment and post-judgement interest as allowed by law; attorneys' fees; expert witness fees; and costs.

## COUNT VI

**Tortious Interference with Employment Relationship (Against Sedgwick)**

107. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

108. While employed at Notre Dame, Plaintiff was an employee working under a verbal agreement to provide services in exchange for a salary and other benefits.

109. It is illegal for any individual or corporation to interfere with that employment relationship.

110. Sedgwick intentionally interfered in Mr. Mandarakas' employment relationship with Notre Dame by supporting Notre Dame's efforts to interfere with Mandarakas' FMLA rights and his continued employment.

111. The actions of Sedgwick have resulted in the damages to Mr. Mandarakas including lost wages, emotional distress, loss of reputation and other harm.

## COUNT VII

### Breach of Contract (Third Party Beneficiary) (Against Sedgwick)

112. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

113. Sedgwick was engaged by Notre Dame via contract to act as the third-party administrator for FMLA rights and leave requests.

114. The purpose of the contract or agreement was to impose on an obligation on Sedgwick for the benefit of Notre Dame's employees - to ensure that those employees' requests for leave are handled appropriately.

115. As an employee of Notre Dame, Mandarakas is third-party beneficiary of the contract between Notre Dame and Sedgwick.

116. Sedgwick breached the contract by interfering with Mandarakas' FMLA rights.

117. Sedgwick breached the contract by supporting Notre Dame's efforts to interfere with Mandarakas' FMLA rights.

118. The actions of Sedgwick have resulted in the damages to Mr. Mandarakas including lost wages, emotional distress, loss of reputation and other harm.

## COUNT VIII

### Breach of Fiduciary Duty  (Against Sedgwick)

119. Plaintiff re-alleges all preceding paragraphs as if fully set forth herein.

120. Notre Dame delegated its authority to oversee FMLA leave requests.

121. Sedgwick knew that Notre Dame interfered with Mandarakas' FMLA rights by requesting that Mandarakas attend work meetings while on leave.

122. Sedgwick breached its fiduciary duty to Mandarakas by allowing Notre Dame to interfere with Mandarakas' FMLA rights.

123. The actions of Sedgwick have resulted in the damages to Mr. Mandarakas including lost wages, emotional distress, loss of reputation and other harm.

WHEREFORE Plaintiff, George Mandarakas, demands judgment against Defendants, jointly and severally, in an amount which will fully and fairly compensate him for his injuries and damages; lost wages and benefits; compensatory damages for loss of employment, loss of wages and benefits, emotional pain and suffering, indignity, humiliation, embarrassment, inconvenient and damage to his reputation, loss of career, and out-of-pocket expenses; punitive damages, any other relief the Court deems just and necessary to make Plaintiff whole and effectuate the purpose of the law, including equitable and injunctive relief, prejudgment and post-judgement interest as allowed by law; attorneys' fees; expert witness fees; and costs.

## JURY DEMAND

COMES NOW the Plaintiff, George Mandarakas, and hereby requests a trial by jury in the above-captioned matter.

GEORGE MANDARAKAS

*George Mandarakas*                    2/18/23

_____        _____

(Signature)                              (Date)