**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GEORGE MANDARAKAS<br>45 Ironia Road<br>Mendham, NJ 07945<br><br>   Plaintiff,<br> v.<br><br>THE UNIVERSITY OF NOTRE DAME DU LAC<br>220 Main Building<br>Notre Dame, IN 46556<br><br>   Defendant. | CIVIL ACTION<br><br>No.: 2:23-cv-02539-MCA-JRA<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED CIVIL ACTION COMPLAINT**

Plaintiff, George Mandarakas (hereinafter referred to as "Plaintiff"), by and through his undersigned counsel, hereby avers as follows:

**INTRODUCTION**

1. Plaintiff has initiated this action to redress violations by the University of Notre Dame Du Lac (hereinafter "Defendant") of the Family and Medical Leave Act ("FMLA" – 29 U.S.C. § 2601 et. seq.) and the New Jersey Family Leave Act ("NJ FLA"). Plaintiff was unlawfully terminated by Defendant, and he suffered damages more fully described/sought herein.

**JURISDICTION AND VENUE**

2. Plaintiff resides in and is a citizen of New Jersey.

3. The University of Notre Dame du lac is incorporated under the laws of Indiana with headquarters and/or principal place of business in same, rendering it a citizen of Indiana.

4. This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of New Jersey, and

Defendant is a citizen of Indiana, and the amount in controversy exceeds $75,000.

5. This action is also being initiated pursuant to federal law(s) (FMLA) and therefore, the United States District Court for the District of New Jersey also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

6. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

7. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## PARTIES

8. The foregoing paragraphs are incorporated herein their entirety as if set forth in full.

9. Plaintiff is an adult who resides at the above-captioned address.

10. The University of Notre Dame du lac is a private Catholic research university, located at the address set forth in the above-caption.

11. At all times relevant herein, Defendant acted through its agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

12. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

13. Plaintiff, a graduate of Defendant, was employed by Defendant as a Director of Corporate Relations with the Development Department, from in or about February of 2018, until his unlawful termination (discussed further *infra*) on or about May 31, 2021.

14. While Defendant is headquartered in Indiana, Plaintiff was hired to work remotely for Defendant and performed his job from his residence in New Jersey.

15. Plaintiff was primarily supervised by Senior Director of Corporate Relations, Josh Tullis (hereinafter "Tullis").

16. Throughout his employment with Defendant, Plaintiff was a hard-working employee, who performed his job well, outperforming his peers despite a lack of prior experience in the area of Development.

17. On or about February 16, 2021, Plaintiff announced to Defendant's management, including but not limited to Tullis, that his wife was pregnant, and he intended to take four weeks of FMLA leave to care for and bond with his newborn child.

18. Despite that Plaintiff was eligible for a total of 12 weeks of block and/or intermittent FMLA leave for the birth of his child, Defendant's management, including but not limited to Tullis, exhibited extreme frustration with Plaintiff's need for FMLA leave, pressuring him to take only one week of leave because "[his] wife should be able to do it on her own."

19. Notwithstanding Defendant's management's clear attempt to interfere with Plaintiff's FMLA rights, Plaintiff maintained that he would be taking an approximate one month leave to care for and bond with his newborn child.

20. Defendant's management, including but not limited to Tullis, then began to subject Plaintiff to increased hostility and animosity, including issuing Plaintiff pretextual discipline.

21. Specifically, on or about March 16, 2021, Plaintiff was called in to a meeting with Tullis and presented with a "final warning," which outlined several alleged "performance" and/or "professionalism" concerns.

22. The aforesaid list of concerns from Tullis (*see* Paragraph 21, *supra*), came as a shock to Plaintiff, as the purported issues were petty, confusing, untrue, and clearly manufactured in an effort to create a paper trail to justify further discipline and/or termination of Plaintiff in retaliation for his request for FMLA leave to bond with his newborn child.

23. By way of example, two such petty critiques of Plaintiff's performance were that he purportedly failed to sit up straight in Zoom meetings and dressed too casually for the same.

24. Defendant's management's aforesaid trivial complaints regarding his posture and attire are completely untrue and pretextual because: (1) Plaintiff's attire was no different from the other employees on his team; (2) Plaintiff had never been counseled to dress "more professionally" or to sit up straighter during Zoom calls **prior to his request for FMLA** leave, despite dressing and sitting in the same fashion on many if not all occasions prior to the March 16, 2021 "final warning;" and (3) following the "final warning" issued to Plaintiff on or about March 16, 2021, Plaintiff witnessed other employees, including Tullis (who had not requested and/or utilized FMLA) continue to dress similarly to or less professionally than Plaintiff, without being issued any discipline.

25. Plaintiff was also criticized during the March 16, 2021 meeting for purportedly using his cell phone to join a Zoom call, rather than his computer. However, Plaintiff had been given permission by management to use his cell phone for Zoom calls, as his Defendant-issued

computer webcam was broken, which he had previously alerted management about and management had refused to take any action to replace his webcam. Moreover, Tullis routinely conducted Zoom meetings on his own cell phone from his car.

26. During the March 16, 2021 meeting, Tullis also informed Plaintiff that he was being disciplined because his donations were purportedly "down." However, donations were down generally across the board for Defendant due to the effects of the COVID-19 pandemic, and there was nothing to suggest that Plaintiff was not working hard to attain his targets. In fact, up until his unlawful termination (discussed further *infra*), Plaintiff had amassed the largest pipeline of opportunities on his team.

27. Despite believing that the aforesaid alleged concerns (*see* Paragraphs 22-26, *supra*) from Defendant's management were petty, exaggerated, and/or untrue, Plaintiff took steps to address the "final warning" with his manager, but he was largely ignored and shutdown by Tullis when Plaintiff attempted to address the purported concerns.

28. Additionally, in an effort to ensure that Plaintiff was unable to improve his donation totals, Tullis began to steal Plaintiff's assigned accounts and donations as his own.

29. Plaintiff believes and therefore avers that Defendant's management's "final warning" was intended to discourage him from taking FMLA leave to care for and bond with his newborn child.

30. Defendant normally follows a progressive discipline policy, which includes coaching, warnings, and performance improvement plans (PIPs), prior to issuing a "final warning," yet escalated Plaintiff's discipline immediately to a "final warning" in violation of their own policy and with no prior warnings or other discipline.

31. As a result of the foregoing mistreatment, discrimination, and retaliation by

Defendant's management, including but not limited to Tullis, Plaintiff filed a complaint with Defendant's Office of Institutional Equity on or about May 5, 2021, the same day that he commenced FMLA leave, in the hopes Defendant would look into these discriminatory and retaliatory actions and also prevent any further retaliatory actions by Tullis.

32. Plaintiff was approved for FMLA leave from on or about May 5, 2021, through on or about June 16, 2021.

33. While on FMLA leave, Defendant's management, including but not limited to Tullis and Tullis' supervisor, Drew Buscareno (hereinafter "Buscareno") interfered with Plaintiff's FMLA rights and the ability to care for and bond with his newborn child, by pressuring Plaintiff on multiple occasions to attend work meetings.[1]

34. As a result of the aforesaid interference with his FMLA rights, Plaintiff reached out to complain to Defendant's third-party benefits provider, Sedgwick, for assistance.

35. Thereafter, on or about May 12, 2021, a Disability Claims Specialist for Sedgwick, Leslie Rigsby (hereinafter "Rigsby") advised Defendant's management via email that they should cease requiring Plaintiff to attend meetings while on FMLA, as it constituted interference. The May 12, 2021 email reads as follows:

> *George has requested a continuous leave of absence beginning 5/21/21-6/1/21 for the care of a family member and it is considered FMLA interference to require him to attend a meeting while he is pending FMLA. George has contacted me stating he has received an email that is demanding/requiring he attend a meeting.*

---

[1] The FMLA prohibits an employer from "interfer[ing] with, restrain[ing], or deny[ing] the exercise of or the attempt to exercise, any right provided under this subchapter." *See Sommer v. Vanguard Group*, 461 F.3d 397, 399 (3d Cir. 2006), (citing 29 U.S.C. § 2615(a)(1)); *see also Arban v. West Publishing Corp.*, 345 F.3d 390, 405 (6th Cir. 2003) (asking employee to perform work-related tasks while he was on medical leave interfered with his rights under the FMLA); *Antekeier v. Lab. Corp. of Am.*, 295 F. Supp. 3d 679, 684 (E.D. Va. 2018) (holding "[C]ontacts that amount to asking an employee to work, such as requesting that an employee prepare a memorandum or organize events for a client, likely cross the line into impermissible interference with FMLA leave"); *Sherman v. AI/FOCS, Inc*., 113 F. Supp. 2d 65, 70-71 (D. Mass. 2000) ("By essentially requiring Plaintiff to work while on leave . . . Defendant has 'interfered' with Plaintiff's attempts to take leave.").

*Please let me know if you have additional questions.*

*Thank you,*

*Leslie Rigsby (CLMS) Disability Claims Specialist*

36. After Rigsby provided the aforesaid email to Defendant's management regarding their interference with Plaintiff's FMLA rights during leave, Rigsby informed Plaintiff that a member of Defendant's management contacted Rigsby to reverse her stance that requiring Plaintiff to attend work meetings during his FMLA leave constituted interference.

37. In response to Defendant's pressuring Rigsby to reverse her stance that requiring Plaintiff to attend work meetings during his FMLA leave constituted interference, Rigsby informed Plaintiff via email that Sedgwick should not have offered an opinion about FMLA interference.

38. Thereafter, on or about June 14, 2021, when Plaintiff called Sedgwick to arrange for his upcoming return to work, he was advised by Sedgwick that he had been terminated by Defendant on or about May 31, 2021. Plaintiff had not been made aware of his termination by Defendant prior to his call to Sedgwick.[2]

39. Following the aforesaid notice of his termination by Sedgwick, Plaintiff reached out to Defendant's President, Reverend Jenkins (hereinafter "Reverend Jenkins"), to request an investigation into the aforesaid retaliatory and discriminatory conduct leading to his unlawful termination.

40. In response to his aforesaid request for an investigation into the retaliatory and discriminatory conduct resulting in his unlawful termination, Plaintiff received a response from Defendant's in-house counsel, informing Plaintiff that no wrongdoing had been found and that

---

[2] During the same phone call to Sedgewick to arrange his upcoming return to work, Plaintiff was informed by another Disability Claims Specialist that Rigsby had been placed on leave, which occurred **after** she had been pressured to reverse her stance that requiring Plaintiff to attend work meetings during his FMLA leave constituted interference.

Plaintiff would not be reinstated.

41. Plaintiff believes and therefore avers that he was terminated in violation of the FMLA and NJ FLA.

## COUNT I
### Violations of the Family and Medical Leave Act ("FMLA")
([1] Interference & [2] Retaliation)

42. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

43. Plaintiff was an eligible employee under the definitional terms of the FMLA, 29 U.S.C. § 2611(a)(i)(ii).

44. Plaintiff requested leave from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of 29 U.S.C.A § 2611(2)(i).

45. Plaintiff had at least 1,250 hours of service with Defendant during his last full year of employment.

46. Defendant is engaged in an industry affecting commerce and employ fifty (50) or more employees for each working day during each of the twenty (20) or more calendar work weeks in the current or proceeding calendar year, pursuant to 29 U.S.C.A § 2611(4)(A)(i).

47. Plaintiff was entitled to receive leave pursuant to 29 U.S.C.A § 2612 (a)(1) for a total of twelve (12) work weeks of leave on a block or intermittent basis.

48. Plaintiff was terminated in close proximity to his requests for/utilization of block FMLA leave to bond with his newborn child.

49. Defendant committed interference and retaliation violations of the FMLA by: (1) terminating Plaintiff for requesting and/or exercising his FMLA rights and/or for taking FMLA-qualifying leave; (2) by considering Plaintiff's FMLA leave needs in making the decision to

terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking FMLA-qualifying leave in the future; (4) engaging in conduct which discouraged Plaintiff from exercising his FMLA rights and which would discourage, dissuade and/or chill a reasonable person's desire to request and/or take FMLA leave; (5) requiring Plaintiff to perform work during his FMLA leave; and (6) failing to reinstate Plaintiff to his same or similar position following his FMLA leave.

50. These actions as aforesaid constitute violations of the FMLA.

## COUNT II
## Violations of the New Jersey Family Leave Act (NJ FLA)
### (Retaliation & Interference)

51. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

52. Plaintiff was an eligible employee under the definitional terms of the NJ FLA, N.J.S.A. § 34:11B-3(e).

53. Plaintiff requested leave to bond with his newborn child from Defendant, his employer, with whom he had been employed for at least twelve months pursuant to the requirements of N.J.S.A. § 34:11B-3(e).

54. Plaintiff had at least 1,000 hours of service with Defendant during his last full year of employment pursuant to the requirements of N.J.S.A. § 34:11B-3(e).

55. Defendant is engaged by a corporation that employs thirty (30) or more employees for each working day during each of the twenty (20) or more calendar workweeks in the current or proceeding calendar year, pursuant to N.J.S.A. § 34:11B-3(f)(4).

56. Plaintiff was entitled to receive leave pursuant to N.J.S.A. § 34:11B-4 for a total of twelve (12) work weeks of leave on a block or intermittent basis.

57. Defendant committed interference and retaliation violations of the NJ FLA by: (1)

terminating Plaintiff for requesting and/or exercising his NJ FLA rights and/or for taking NJ FLA-qualifying leave to bond with his newborn child; (2) by considering Plaintiff's NJ FLA leave needs in making the decision to terminate him; (3) terminating Plaintiff to intimidate him and/or prevent him from taking NJ FLA-qualifying leave in the future; (4) making negative comments and taking actions towards him that would dissuade a reasonable person from exercising his rights under the NJ FLA; (5) requiring Plaintiff work to perform work during his NJ FLA leave; and (6) failing to reinstate Plaintiff to his same or similar position following his NJ FLA leave.

58. These actions as aforesaid constitute violations of the NJ FLA.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement, and seniority.

C. Plaintiff is to be awarded punitive and/or liquidated damages, as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper, and appropriate (including but not limited to damages for emotional distress/pain and suffering);

   E.  Plaintiff is to be awarded the costs and expenses of this action and reasonable attorney's fees as provided by applicable federal and state law; and

   F.  Plaintiff is to be given a jury trial as demanded in the caption of this Complaint.

              Respectfully submitted,

              **KARPF, KARPF & CERUTTI, P.C.**

        By:  */s/ Ari R. Karpf*
            Ari R. Karpf, Esq.
            3331 Street Road
            Two Greenwood Square, Suite 128
            Bensalem, PA 19020
            (215) 639-0801

Dated: May 31, 2023